# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 06 2019, 10:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

J. Clayton Miller
Jordan Law, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of L.C. (Minor Child)

and

C.D.C., Jr. (Father),
*Appellant-Respondent,*

v.

Indiana Department of Child Services,
*Appellee-Petitioner.*

May 6, 2019

Court of Appeals Case No. 18A-JT-2905

Appeal from the Union Circuit Court

The Honorable Matthew R. Cox, Judge

Trial Court Cause No. 81C01-1802-JT-14

**Bradford, Judge.**

# Case Summary

The Department of Child Services ("DCS") became involved with L.C. ("Child") after receiving reports of neglect by C.D.C., Jr. ("Father") and K.M. ("Mother") (collectively, "Parents"). Although Child was initially left in Father's care, he was subsequently placed with paternal grandparents after Father tested positive for drugs. Less than two months later, Child was removed from paternal grandparents' care after their home was deemed unsuitable and was placed in nonrelative care. Child was determined to be a child in need of services ("CHINS") and Father was ordered to complete certain services.[1] Father, however, failed to successfully complete the ordered services and DCS petitioned to terminate Father's parental rights to Child. In challenging the termination of his parental rights to Child, Father argues that DCS violated his constitutional due process rights by failing to consider relative placement before placing Child in nonrelative placement. We affirm.

# Facts and Procedural History

Child was born on November 29, 2011. In June of 2016, Child was found to be a CHINS due to neglect and drug use by Parents. While Child was initially

---

[1] Mother does not participate in this appeal.

placed in an informal adjustment and left in Father's care, Child was removed from Father's care on August 2, 2016, after DCS received reports of continued drug use by Father. Upon removal, Child was placed with his paternal grandparents. On September 16, 2016, Child was removed from paternal grandparents' home after DCS deemed that the home was not suitable. Child was then placed in nonrelative foster care.

[3] Father initially participated in services offered by DCS. However, over time, Father's participation diminished to unsatisfactory levels. DCS filed a petition seeking to terminate Father's parental rights to Child in February of 2018. Following a multi-day evidentiary hearing, on November 2, 2018, the juvenile court granted DCS's petition and issued an order terminating Father's parental rights to Child.

## Discussion and Decision

[4] At the outset, we note that in challenging the termination of his parental rights, Father does not challenge the juvenile court's findings or conclusions thereon. Father's sole contention is that DCS violated his constitutional due process rights by failing to consider a relative placement for Child before placing him in nonrelative foster care.

> Due process protections bar state action that deprives a person of life, liberty, or property without a fair proceeding. It is unequivocal that the termination of a parent-child relationship by the State constitutes the deprivation of an important interest warranting deference and protection, and therefore when the

> State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process.

*In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014) (internal quotations omitted).

> Substantive due process ensures that state action is not arbitrary or capricious regardless of the procedures used. To set forth a claim for violation of substantive due process, a party must show (1) that the law infringes upon a fundamental right or liberties deeply rooted in our nation's history; or (2) that the law does not bear a substantial relation to permissible state objectives. To succeed, the party must demonstrate that the State's conduct is arbitrary and capricious. The State will prevail if any rational basis for its action can be hypothesized.

*Honeycutt v. Ong*, 806 N.E.2d 52, 58 (Ind. Ct. App. 2004) (internal quotation and citations omitted).

[5] Indiana Code section 31-34-4-2(a) provides that when DCS takes a child alleged to be in need of services into custody, it must consider placing the child with a suitable and willing relative before considering any other out-of-home placement. Father does not challenge the validity of the statute on appeal. He merely argues that DCS acted in a manner that violated his due process rights when it placed Child in nonrelative care.

[6] The record reveals that DCS not only considered relative placement but initially placed Child in a relative placement, *i.e.*, with paternal grandparents. However, less than two months later, Child was removed from paternal grandparents' home after DCS determined that this placement was no longer suitable. DCS's decision was based on reports of potential substance abuse occurring in the

home, Parents, who have a proven history of drug abuse, "spending too much time in the home" with Child despite only having been awarded supervised visitation with Child, tr. vol. III p. 111, the poor condition of at least part of the home, and paternal grandmother's disability which left her unable to provide adequate care for Child. Only after being removed from paternal grandparents' home was Child placed in the nonrelative, pre-adoptive placement where he has lived for more than two years and is thriving.

[7] Father seems to suggest that DCS should have again considered paternal grandparents' home as a placement for Child when the underlying CHINS proceedings transitioned into termination proceedings. Father, however, points to no relevant authority indicating that DCS had any obligation to do so. In addition, the record is devoid of any evidence beyond Father's and paternal grandfather's self-serving testimony that the conditions of the home and paternal grandmother's health had improved. The juvenile court, acting as the trier-of-fact, was able to judge the credibility of Father and paternal grandfather's testimony and was not required to believe or assess the same weight to the testimony as Father. *See generally Marshall v. State*, 621 N.E.2d 308, 320 (Ind. 1993) (providing that it is for the trier-of-fact to determine which witnesses to believe or disbelieve).

[8] The record clearly demonstrates that DCS considered relative placement before placing Child in nonrelative placement. In fact, Child was only placed with nonrelatives after relative placement was deemed unsuitable. DCS satisfied its statutory obligation to consider relative placement before placing Child with

nonrelatives. As such, we are unconvinced that DCS violated Father's constitutional due process rights.

[9] The judgment of the juvenile court is affirmed.

Crone, J., and Tavitas, J., concur.